**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARCO CAVARA, JOSEF JOHANN SCHNEIDER, JÖERG ZAHN, SABINE ZAHN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

THE BOLIVARIAN REPUBLIC OF VENEZUELA,

Defendant.

Case No. 1:25-cv-00165-RA-VF

Hon. Ronnie Abrams

(Oral Argument Requested)

# DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF PLAINTIFFS AS CLASS REPRESENTATIVES, AND APPOINTMENT OF DUANE MORRIS LLP AS CLASS COUNSEL

Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200
*Counsel for Defendants*
*The Bolivarian Republic of Venezuela*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 4

A. The Bonds Are Not Registered in the Names of the Beneficial Owners Who Purport to Bring Suit........ 4
B. Plaintiffs Sabine Zahn, Jöerg Zahn, and Josef Schneider Lack Authorization to Sue. ........ 6
C. Venezuela's Political Developments and the United States Sanctions on the Bonds. ........ 8
D. The Republic Has Tolled the Statute of Limitations Through 2028, as Plaintiffs Have Acknowledged. ........ 8
E. The Zahns' Extensive Pattern of Sovereign Debt Litigation. ........ 9

LEGAL STANDARD........ 10

ARGUMENT ........ 11

I. PLAINTIFFS MAY NOT SERVE AS CLASS REPRESENTATIVES BECAUSE THEY FAIL TO SATISFY RULE 23(A)'S TYPICALITY AND ADEQUACY REQUIREMENTS........ 11

A. Threshold Defects Defeat Typicality and Adequacy. ........ 11

1. Plaintiffs Have Not Demonstrated They Can Enforce the Contracts. ........ 11
2. Plaintiffs Lack Authority to Sue on Ten of the Eleven Series of Bonds. ........ 12

B. The Zahns, Who Seek to Represent Eight Of The Eleven Classes, Are Subject to The Unique Defense of Champerty. ........ 15
C. Sabine Zahn's Disengagement Independently Defeats Adequacy. ........ 17
D. Jöerg Zahn Does Not Wish to Serve. ........ 18
E. Josef Schneider's Trading Intentions Conflict with the Class He Would Represent. ........ 19

II. CLASS CERTIFICATION IS UNWARRANTED UNDER RULE 23(b)(3) BECAUSE COMMON QUESTIONS DO NOT PREDOMINATE. ........ 19

A. Beneficial Ownership Cannot Be Established Without Individualized Tracing. ........ 20
B. Sanctions Compliance Requires Member-By-Member Analysis. ........ 22
C. The Champerty Defense as to Absent Members Cannot Be Tried On Common Proof. ........ 23
D. The 9126 Class Presents Additional Non-Common Issues. ........ 23

E. The Individualized Issues Collectively Overwhelm the One Common Question. .......... 24

III. CLASS CERTIFICATION IS UNWARRANTED UNDER RULE 23(b)(3) A CLASS ACTION IS NOT SUPERIOR TO OTHER AVAILABLE METHODS. .......... 24

A. Bondholders Have Shown that Individual Actions are Feasible and Preferable. .......... 25
B. Eleven Classes of Unidentifiable Members Would Be Unmanageable.......... 26
C. Tolling Does Not Make a Class Action Superior. .......... 26

CONCLUSION.......... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abraugh v. Altimus*,
26 F.4th 298 (5th Cir. 2022) ....................14

*Allan Applestein TTEE FBO D.C.A. v. Republic of Argentina*,
No. 02-cv-4124, 2003 WL 22743762 (S.D.N.Y. Nov. 20, 2003)....................13

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................10

*Arpesella v. Bolivarian Republic of Venezuela*,
No. 23-cv-08929 (S.D.N.Y.)....................8

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*.,
222 F.3d 52 (2d Cir. 2000)....................15, 18

*Brecher v. Republic of Argentina*,
806 F.3d 22 (2d Cir. 2015)....................10, 21

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010)....................15

*Carroll v. Trump*,
88 F.4th 418 (2d Cir. 2023), *adhered to*, 151 F.4th 50 (2d Cir. 2025) ....................14

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
492 F. Supp. 3d 222 (S.D.N.Y. 2020)....................11, 25

*CIBC Bank & Tr. Co. (Cayman) v. Banco Cent. do Brasil*,
886 F. Supp. 1105 (S.D.N.Y. 1995)....................16, 17

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................10, 24

*Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*,
No. 19-cv-11018, 2020 WL 5849013 (S.D.N.Y. Oct. 1, 2020)....................25

*Decastro v. City of New York*,
No. 16-cv-3850, 2019 WL 4509027 (S.D.N.Y. Sept. 19, 2019) ....................20, 24

*Diverse Partners, LP v. AgriBank, FCB*,
No. 16-cv-9526, 2019 WL 4305008 (S.D.N.Y. Sept. 11, 2019) ....................21

*Dover v. Brit. Airways, PLC (UK)*,
321 F.R.D. 49 (E.D.N.Y. 2017) ....................26

*Etevob v. Republic of Argentina*,
471 F. Supp. 2d 432 (S.D.N.Y. 2007), *aff'd sub nom. Mazzini v. Republic of Argentina*, 282 F. App'x 907 (2d Cir. 2008) ....................11, 12

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
407 F. Supp. 3d 422 (S.D.N.Y. 2019)....26

*Index Fund, Inc. v. Hagopian*,
107 F.R.D. 95 (S.D.N.Y. 1985)....14

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006), *clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007)....10

*Int'l Controls Corp. v. Vesco*,
556 F.2d 665 (2d Cir. 1977)....13

*Keepers, Inc. v. City of Milford*,
807 F.3d 24 (2d Cir. 2015)....14

*Koenig v. Benson*,
117 F.R.D. 330 (E.D.N.Y. 1987)....18, 19

*Landry v. Price Waterhouse Chartered Accts.*,
123 F.R.D. 474 (S.D.N.Y. 1989)....15

*Lau v. Fay Servicing, LLC*,
No. 23-cv-1385, 2025 WL 2217280 (S.D.N.Y. Aug. 5, 2025)....14

*Lindsey v. Normet*,
405 U.S. 56 (1972)....23

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995)....18

*Mazzaccone v. The Bolivarian Republic of Venezuela*,
No. 24-cv-6168, 2026 WL 444752 (S.D.N.Y. Feb. 17, 2026)....26

*Mazzini v. Republic of Argentina*,
No. 03-cv-8120, 2005 WL 743090 (S.D.N.Y. 2005)....21

*Metcalf v. TransPerfect Translations Int'l Inc.*,
No. 19-cv-10104, 2024 WL 1208975 (S.D.N.Y. Mar. 21, 2024)....15

*Mullaney v. Delta Air Lines, Inc.*,
258 F.R.D. 274 (S.D.N.Y. 2009)....10

*Norris v. Causey*,
869 F.3d 360 (5th Cir. 2017)....14

*Olifant Fund, Ltd. v. Republic of Argentina*,
No. 10-cv-9587, 2012 WL 1205079 (S.D.N.Y. 2012)....21

*Perez Perez v. Escobar Constr., Inc.*,
No. 23-cv-1240, 2024 WL 3594325 (2d Cir. July 31, 2024)....14

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)....21, 22

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
612 F. Supp. 3d 263 (S.D.N.Y. 2020), *aff'd*, 2021 WL 4515256 (2d Cir. Oct. 4, 2021) ....16

*Phoenix Light Sf Ltd. v. Wells Fargo Bank, N.A.*,
No. 14-cv-10102, 2022 WL 2702616 (S.D.N.Y. July 12, 2022)....14

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*,
757 F.3d 79 (2d Cir. 2014)....11

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)....24

*Romero v. Flaum Appetizing Corp.*,
No. 07-cv-7222, 2011 WL 812157 (S.D.N.Y. Mar. 1, 2011)....16

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
324 F. Supp. 3d 387 (S.D.N.Y. 2018)....25

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
No. 14-cv-9764, 2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ....21

*Scott v. New York City Dist. Council of Carpenters Pension Plan*,
224 F.R.D. 353 (S.D.N.Y. 2004) ....17, 18

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)....14

*Steinmetz v. Bache & Co.*,
71 F.R.D. 202 (S.D.N.Y. 1976) ....25

*Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*,
No. 21-cv-2684, 2024 WL 3637997 (S.D.N.Y. Aug. 1, 2024)....23

*Traver v. Lowe's Home Ctrs., Inc.*,
No. 12-cv-3528, 2014 WL 12825659 (E.D.N.Y. June 27, 2014), *adopted*, 2016 WL 880169 (E.D.N.Y. Mar. 1, 2016)....20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....10, 23, 27

*Weiner v. Snapple Beverage Corp.*,
No. 07-cv-8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)....20, 24

*Zahn v. Bolivarian Republic of Venezuela*,
No. 24-cv-9271, 2026 WL 2185589 (S.D.N.Y. July 29, 2026)....2, 13, 15, 17, 18

**State Cases**

*Justinian Cap. SPC v. WestLB AG*,
28 N.Y.3d 160 (2016) ....15, 16

*Springwell Nav. Corp. v. Sanluis Corporación, S.A.*,
81 A.D.3d 557 (1st Dep't 2011) ....11, 12

**Federal Statutes**

28 U.S.C. § 2072(b) ....................23

**State Statutes**

N.Y. Jud. Law § 489 ....................2, 15, 17
N.Y. Jud. Law § 489(1) ....................16
N.Y. Jud. Law § 489(2) ....................16

**Rules**

Fed. R. Civ. P. 12 ....................13
Fed. R. Civ. P. 12(a)(4)(A) ....................14
Fed. R. Civ. P. 12(b)(6) ....................14
Fed. R. Civ. P. 17(a) ....................13
Fed. R. Civ. P. 23 ....................9, 20
Fed. R. Civ. P. 23(a) ....................1, 10, 24, 26
Fed. R. Civ. P. 23(a)(4) ....................18
Fed. R. Civ. P. 23(b) ....................25
Fed. R. Civ. P. 23(b)(3) ....................1, 3, 10, 19, 24
Fed. R. Civ. P. 23(b)(3)(B) ....................25
Fed. R. Civ. P. 23(c)(2) ....................22

**Regulations**

84 Fed. Reg. 38843 (Aug. 7, 2019) ....................8

**Other Authorities**

*FAQ 3, Off. of Foreign Assets Control*, https://ofac.treasury.gov/faqs/3; ....................22
*FAQ 53, Off. of Foreign Assets Control*, https://ofac.treasury.gov/faqs/53 ....................22
*FAQ 91, Off. of Foreign Assets Control*, https://ofac.treasury.gov/faqs/91 ....................22
*FAQ 401, Off. of Foreign Assets Control*, https://ofac.treasury.gov/faqs/401 .................... 22-23
*FAQ 808, Off. of Foreign Assets Control*, https://ofac.treasury.gov/faqs/808 ....................8

Defendant, the Bolivarian Republic of Venezuela ("the Republic"), submits this memorandum of law in opposition to the Motion for Class Certification, Appointment of Plaintiffs as Class Representatives, and Appoint of Duane Morris LLP as Class Counsel (the "Motion") filed by Plaintiffs Marco Cavara, Josef Johann Schneider, Jöerg Zahn, and Sabine Zahn.[1]

## PRELIMINARY STATEMENT

To become a class representative under Rule 23(a), each Plaintiff must satisfy four elements—numerosity, commonality, typicality, and adequacy of representation—before demonstrating under Rule 23(b)(3) that common questions of law and fact predominate over individual issues and that a class action to be superior to other available methods of adjudication. For ten of the eleven classes Plaintiffs seek to represent, the Rule 23(a) requirements have not been met on several grounds. Further, because Plaintiffs cannot satisfy the requirement of Rule 23(b)(3), Motion should be denied in its entirety for multiple independent reasons.

Initially, Plaintiffs Sabine Zahn, Jöerg Zahn, and Josef Schneider are neither typical nor adequate under Rule 23(a). As a threshold matter, Plaintiffs have no rights under the contracts under which they sue; the relevant Fiscal Agency Agreements ("FAAs") confer all rights on the U.S. Depositary (or its nominee), which is to be treated as the security owner "for all purposes whatsoever." While the FAAs provide a mechanism to transfer the right to sue, Plaintiffs failed to obtain the authority to sue on ten of the eleven bond series at issue (the "Bonds"). Nine of those ten series are held through the Depository Trust Company ("DTC") and registered in the name of its nominee Cede & Co. The letters that Ms. Zahn, Mr. Zahn, and Mr. Schneider obtained from Cede & Co. authorize only the DTC participant—Citibank U.S.—to act on the registered holder's

[1] Former Plaintiff Maria Schneider appears in the case caption and was offered as a case representative in Plaintiffs' Motion. ECF Nos. 31, 39. She is no longer a plaintiff in this action (ECF Nos. 47, 48) and is no longer a party to the Motion.

behalf; they confer no authority on the Plaintiffs, who are identified merely as "Beneficial Owners." They produced no authorization from Citibank, and each conceded at deposition that none exists. The tenth series, the 9126 Bonds, is held through Euroclear and Clearstream, and the Clearstream letter Ms. Zahn obtained refused even to confirm that she owns a beneficial interest in that series, stating expressly that beneficial-owner allocations are "not reflected in our books." The chain of authorization is broken at every link, and a plaintiff who cannot establish her own right to sue plainly cannot serve as a class representative.

The Zahns, who together seek to represent eight of the eleven proposed classes, are also subject to the unique defense of champerty thus rendering them atypical and inadequate to serve. Six weeks ago, based on the same deposition testimony, a similar investment history, and the same champerty defense presented here, another judge of this Court denied Plaintiff Sabine Zahn's motion to serve as a class representative in a parallel action on Venezuelan sovereign bonds, holding that the "combination of [Ms.] Zahn's aloofness and Venezuela's unique defense of champerty . . . is fatal to her assertions of typicality and adequacy." *Zahn v. Bolivarian Republic of Venezuela*, No. 24-cv-9271, 2026 WL 2185589, at *6 (S.D.N.Y. July 29, 2026) (Cronan, J.). Her husband, a veteran of the Argentine sovereign debt litigation responsible for all decisions regarding their Bond holdings and associated litigation decisions, acquired nominal positions in long-defaulted Venezuelan bonds (through intra-family paper transfers and a $10,000 open-market purchase weeks before this suit was filed) on their counsel's advice that class actions offered "an alternative way to seek recovery on defaulted bonds." New York Judiciary Law § 489 voids acquisitions made for the purpose of bringing suit, and the fact-intensive inquiry into the Zahns' intent will become a focus of the litigation, diverting attention from issues common to absent class members.

Individual defects further compound these problems. Mr. Zahn has managed the family's investments, purchased the Bonds, and is the one who communicates with counsel. At deposition, Ms. Zahn could not even identify the Bonds she holds, the contracts governing them, when this action was filed, or the judge presiding over it. Yet, Mr. Zahn does not want the role at all, testifying that he was "chosen by accident" and "was hoping not to" serve. And Mr. Schneider, who kept buying the same series after filing suit, testified that he hopes to "find a silly guy who would buy my bonds for a high price"—an intent to exit at a favorable market price that diverges from the class's interest in maximizing litigated recovery.

First, with respect to Rule 23(b)(3), common questions do not predominate. Determining who owns beneficial interests in the Bonds, and on what date, requires tracing each holder's position through multiple layers of clearing systems, participants, brokers, and custodians. This is a sprawling inquiry that is not susceptible to class-wide proof. Plaintiffs' own experience proves the point: neither Ms. Zahn nor Mr. Schneider could obtain records confirming their holdings as of a date certain. Because the Bonds are blocked property under U.S. sanctions, each member's participation, settlement, and enforcement will also require individualized Office of Foreign Assets Control ("OFAC") licensing and screening. And the champerty defense, which the Republic has already asserted successfully against a fund formed to acquire Venezuelan debt for collective enforcement, will require member-by-member discovery into subjective intent and consideration paid, discovery that courts rarely permit from absent class members.

Second, under Rule 23(b)(3), a class action lawsuit is not superior to other available methods of adjudication. Dozens of class actions on Venezuelan sovereign debt have already been filed in this District, pursuing divergent strategies—some seeking immediate judgment, others voluntarily dismissing without prejudice in reliance on the Republic's tolling resolution, which

demonstrates that individual litigation is feasible and preferable to many plaintiffs. The individualized issues described above would render class proceedings unmanageable. And Plaintiffs' contention that certification is necessary to toll the statute of limitations is unfounded: limitations on all Venezuelan bonds are already tolled through December 31, 2028, as Ms. Zahn, Mr. Schneider, and Mr. Cavara each expressly acknowledged in a stipulation of dismissal in a separate action.

## STATEMENT OF FACTS

Plaintiffs seek to certify eleven series of Venezuelan sovereign bonds (the "Bonds"). *See* Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 48 ¶¶ 1–13, 53-63. Ten series were issued under the 2001 Fiscal Agency Agreement ("FAA") and one, the 9.25% U.S. Dollar-Denominated Unsecured Global Bonds, ISIN US922646AS37 (the "AS37 Bonds"), was issued under the 1997 FAA. ECF No. 48 ¶¶ 2–13, 38–39. Both agreements are governed by New York law. ECF No. 48 ¶¶ 38–39; Ex. A § 12; Ex. B § 12. Plaintiffs allege the Republic failed to make contractually mandated payments of principal and interest on the Bonds. ECF No. 48 ¶ 1.

### A. The Bonds Are Not Registered in the Names of the Beneficial Owners Who Purport to Bring Suit.

The 2001 FAA provides that U.S. Global Notes are registered in the name of the U.S. Depositary or its nominee, that no other party has rights under the FAA or the U.S. Global Note, and that the U.S. Depositary or nominee may be treated by the Republic, the Fiscal Agent, and their agents as the absolute owner and holder "for all purposes whatsoever." ECF No. 48, Ex. A § 1(e)(i)–(ii). It defines the holder of a registered Note as the person in whose name the Note is

registered in the Note register "for all purposes under this Agreement and the Notes." ECF No. 48, Ex. A § 1(i). The 1997 FAA is materially the same.[2] ECF No. 48, Ex. B § 1.

Consistent with that structure, ten of the eleven series are held in book-entry form through the Depository Trust Company ("DTC") and registered in the name of DTC's nominee, Cede & Co., which is treated as "the sole owner or holder" of the Bonds "for all purposes under the Fiscal Agency Agreement and the Bonds." Shaftel Decl. ¶¶ 4-14, Ex. 1 [AN08] at 112, Ex. 2 [AG56] at 29, Ex. 3 [AC16] at 118, Ex. 4 [AA59] at 109, Ex. 5 [AP55] at 112, Ex. 6 [AE71] at 132, Ex. 7 [AS37] at 76, Ex. 8 [AB33] at 109, Ex. 9 [AD98] at 69, Ex. 10 [AJ95] at 27, Ex. 11 [AJ95] at 28.[3] DTC maintains records only of its own participants; it has no relationship with investors and no knowledge of "whether a Participant is acting for itself or for a customer, or whether that customer is a retail investor or another financial institution acting for its customer (and so on)." Brief of *Amicus Curiae* The Depository Tr. Co. Not in Support of Any Party at 14, *In re Petrobras Sec.*, No. 16-1914 (2d Cir. Sept. 16, 2016), ECF No. 293.

The eleventh series, the 7.65% Bonds maturing on April 21, 2025, ISIN XS0217249126 (the "9126 Bonds"), is "registered in the name of a nominee of, and deposited with Deutsche Bank AG, as common depositary for Euroclear Bank S.A./N.V. . . . and Clearstream Banking," with "[f]inancial institutions, acting as direct and indirect participants in those clearing systems," holding investors' "beneficial interests in a global note." Shaftel Decl. ¶ 15, Ex. 11, at 19, 31.

---

[2] It provides that members or participants in a U.S. Depositary have no rights under the agreement with respect to a definitive registered global security, and that the U.S. Depositary may be treated as the sole owner of such global security "for all purposes whatsoever." ECF No. 48, Ex. B § 1(f)(i).

[3] All the Listing Memoranda are publicly available as of this date other than for the ISIN US922646AS37 (which were recently publicly available). *See* Shaftel Decl. ¶¶ 4-15. The Republic will nonetheless provide the Plaintiffs with bates stamped versions of each Listing Memorandum in its upcoming document production.

Plaintiffs pleaded and have argued only that they "hold beneficial interests," and not that they are registered holders, that a registered holder assigned them claims, or that any depository or participant authorized them to sue in their own names. *See* ECF No. 39, at 12-14; ECF No. 48 ¶¶ 28–31, 50, 53–63.

### B. Plaintiffs Sabine Zahn, Jöerg Zahn, and Josef Schneider Lack Authorization to Sue.

The 1997 and 2001 FAAs provide a route by which a beneficial owner may act, requiring a "written certification, proxy or other authorization" furnished through the Depositary or its nominee. ECF 48, Ex. A §§ 1(e)(ii), 1(f)(ii). Plaintiffs alleged beneficial interests in the following series[4] and apparently rely on the following letters as their authority to sue:

| **Series** | **Plaintiff** | **Source of Plaintiffs' Alleged Authorization**[5] |
|---|---|---|
| AG56 | S. Zahn | CEDE & CO. - signed 3.2.2026 (CAVARA000116) |
| 9126 | S. Zahn | Clearstream - signed 10.24.2025 (CAVARA000096) |
| AE71 | S. Zahn | CEDE & CO. - signed 11.25.2025 (CAVARA000104) |
| AB33 | S. Zahn | CEDE & CO. - signed 11.21.2025 (CAVARA000108) |
| AD98 | S. Zahn | CEDE & CO. - signed 11.25.2025 (CAVARA000106) |
| AC16 | J. Zahn | CEDE & CO. - signed 3.27.2026 (CAVARA000114) |
| AA59 | J. Zahn | CEDE & CO. - signed 4.2.2026 (CAVARA000112) |
| AS37 | J. Zahn | CEDE & CO. - signed 4.2.2026 (CAVARA000110) |
| AP55 | J. Schneider | CEDE & CO. - signed 11.21.2025 (CAVARA000100) |

[4] With reference to the International Securities Identification Number of each series, the as yet undefined Bonds are referenced hereinas follows: USP97475AN08 (the "AN08 Bonds"), USP97475AG56 (the "AG56 Bonds"), USP17625AC16 (the "AC16 Bonds"), USP17625AA59 (the "AA59 Bonds"), USP97475AP55 (the "AP55 Bonds"), USP17625AE71 (the "AE71 Bonds"), USP17625AB33 (the "AB33 Bonds"), USP17625AD98 (the "AD98 Bonds"), and USP97475AJ95 (the "AJ95 Bonds").

[5] Shaftel Decl. ¶¶ 16-26, Exs. 13-23.

| | | |
|---|---|---|
| AJ95 | J. Schneider | CEDE & CO. - signed 11.21.2025 (CAVARA000097) |
| AN08 | Cavara | CEDE & CO. - signed 3.12.2025 (CAVARA000099) |

Nine of the ten Cede & Co. letters are identical in operative substance. Each of these nine "authorizes the Participant, solely with respect to the Subject Notes beneficially owned by the Beneficial Owner on the Subject Date, to take any and all actions and exercise any and all rights and remedies that Cede & Co., as the holder of record of the Subject Notes on the Subject Date, is entitled to take." Shaftel Decl. ¶¶ 16-18, 20-25, Exs. 13-15, 17-22. Each of these identifies the "Participant" as Citibank U.S. and the individual Plaintiff as the "Beneficial Owner." *Id.* Neither Ms. Zahn, Mr. Zahn, nor Mr. Schneider produced any authorization from Citibank U.S., and each testified that he or she is aware of none. Shaftel Decl. ¶ 27, Ex. 24 ("S. Zahn Tr.") 47:3–50:18; ¶ 28, Ex. 25 ("J. Zahn Tr.") 69:2–73:4, 73:20–75:7, 76:8–77:22; ¶ 29, Ex. 26 ("Schneider Tr.") 75:8–80:10.

Ms. Zahn's supposedly authorizing document for the 9126 Bonds is a letter from Clearstream Banking confirming only that its direct participant's account (no. 67004) held the ISIN. Shaftel Decl. ¶ 19, Ex. 16 (CAVARA000096). As to Ms. Zahn, the letter refused even to confirm her alleged beneficial ownership of the 9126 Bonds; the letter states that the beneficial-owner allocation is the account holder's own assertion "in your books," that "a segregation at beneficial owner level is not reflected in our books and we do therefore not review or validate your information," and that accuracy is the account holder's "sole responsibility." *Id.* Ms. Zahn could not identify any writing stating that she is a beneficial owner of the 9126 Bonds. S. Zahn Tr. 51:1–52:15.

### C. Venezuela's Political Developments and the United States Sanctions on the Bonds.

The Bonds were issued during the Presidency of Hugo Chávez. *See* ECF No. 48 ¶¶ 2-12. President Nicolás Maduro succeeded President Chávez in 2013, after his passing, and was the President until his apprehension by the United States in January 2026. In 2019, the United States blocked all property and interests in property of the "Government of Venezuela," including the Bonds. Shaftel Decl., ¶ 30, Ex. 27 (Exec. Order No. 13884, 84 Fed. Reg. 38843 (Aug. 7, 2019)). Although the OFAC has since authorized certain categories of transactions by general license, *see* Shaftel Decl., ¶ 31, Ex. 28 (General License No. 3I); ¶ 32, Ex. 29 (General License No. 31B), the Bonds remain blocked property, and a specific OFAC license is required for any person to enter into any settlement agreement or to enforce any judgment concerning the Bonds. FAQ 808, Off. of Foreign Assets Control (May 1, 2023), https://ofac.treasury.gov/faqs/808.

### D. The Republic Has Tolled the Statute of Limitations Through 2028, as Plaintiffs Have Acknowledged.

On March 30, 2023, the Republic issued a Tolling Announcement extending the statutes of limitations applicable to all bonds validly issued by the Republic until December 31, 2028 (the "Tolling Announcement"). Shaftel Decl. ¶ 33-34, Exs. 30-31.[6] Dozens of creditors have terminated litigation involving billions of dollars of debt without prejudice to reinstating their claims on or before December 31, 2028. *See* Shaftel Decl. ¶ 36.

Three of the four Plaintiffs are among them. Plaintiffs Sabine Zahn, Josef Schneider, and Marco Cavara were plaintiffs in *Arpesella v. Bolivarian Republic of Venezuela*, No. 23-cv-08929 (S.D.N.Y.), where they sued individually on several of the same series at issue here, including the

[6] Prior to the capture of President Maduro, the so-called National Assembly, which unlawfully claimed to represent the Republic at the time, purported to issue a tolling resolution intending to extend the statute of limitations on actions relating to the Bonds to December 31, 2028. *See* Shaftel Decl. ¶ 35, Ex. 32.

AC16, AB33, AS37, and AJ95 Bonds. *See* Complaint at ¶ 31, *Arpesella*, No. 23-cv-08929 (S.D.N.Y.), ECF No. 1. On March 7, 2025, two months after filing this action, they stipulated to voluntary dismissal of those claims without prejudice, expressly reciting that the Republic had extended "the statute of limitations applicable to an action on the Bonds validly issued by the Republic until December 31, 2028." Joint Stipulation and Order of Partial Dismissal Without Prejudice at 2-3, *Arpesella*, No. 23-cv-08929 (S.D.N.Y.), ECF No. 37. Ms. Zahn presumably acted on her husband's advice. They remain free to refile at any time through 2028.

**E. The Zahns' Extensive Pattern of Sovereign Debt Litigation.**

Jöerg Zahn held Argentine sovereign bonds when Argentina defaulted in 2001. He retained counsel to pursue recovery, and Michael Spencer later joined a New York action filed in 2005; that litigation resolved through Argentina's "Propuesta" settlements beginning in 2016. ECF No. 33 ¶ 8. The Zahns then acquired positions in Venezuelan bonds already in default and retained counsel recommended by Mr. Spencer. ECF No. 33 ¶ 12. As they explain, they "continued to purchase some more Venezuela sovereign bonds. Our lawyers told us about class actions as an alternative way to seek recovery on defaulted bonds. In addition to representing many Argentine bondholders, Michael Spencer was an experienced plaintiff class action lawyer." ECF No. 33 ¶ 14. Ms. Zahn herself has been a plaintiff in at least seven other recent lawsuits filed in the Southern District of New York in addition to this action. *See* Shaftel Decl. ¶ 37.

As of early December 2024, Mr. Zahn held no interest in any of the Bonds. That month he purchased $10,000 face amount of AS37 Bonds and acquired $10,000 face amount each of AC16 and AA59 Bonds by paper transfer from his wife. ECF No. 33 ¶ 2. This action was filed on January 8, 2025. ECF No. 1.

## LEGAL STANDARD

Class certification is warranted only where the party seeking it "affirmatively demonstrate[s]" compliance with Rule 23 through evidentiary proof. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "Actual, not presumed" compliance with Rule 23 remains "indispensable," requiring a "rigorous analysis." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006) (citations omitted), *clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007). Rule 23's requirements are "stringent" and "in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

A plaintiff must first satisfy each of Rule 23(a)'s four prerequisites—numerosity, commonality, typicality, and adequacy—Fed. R. Civ. P. 23(a), together with the "implied requirement of ascertainability," *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (citations omitted). A plaintiff proceeding under Rule 23(b)(3), as Plaintiffs do here, must also demonstrate both "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is "far more demanding than the Rule 23(a) requirement that common questions of law or fact exist." *Mullaney v. Delta Air Lines, Inc.*, 258 F.R.D. 274, 278 (S.D.N.Y. 2009). Plaintiff fails to demonstrate typicality, adequacy, and ascertainability.

## ARGUMENT

### I. PLAINTIFFS MAY NOT SERVE AS CLASS REPRESENTATIVES BECAUSE THEY FAIL TO SATISFY RULE 23(A)'S TYPICALITY AND ADEQUACY REQUIREMENTS.

#### A. Threshold Defects Defeat Typicality and Adequacy.

In a breach of contract action, neither of the typicality or adequacy requirements can be satisfied where a would-be representative has no right even to enforce the contract and has otherwise not been authorized to sue.

##### 1. Plaintiffs Have Not Demonstrated They Can Enforce the Contracts.

A plaintiff who has no right to enforce a contract cannot maintain an action for breach of contract. *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014). Further, a plaintiff who lacks the right to sue on her own claim cannot assert anyone else's. Under New York law, a beneficial owner of a global note registered in the name of a depositary's nominee may not sue in its own name unless it obtains authorization from the registered holder. *Springwell Nav. Corp. v. Sanluis Corporación, S.A.*, 81 A.D.3d 557, 558 (1st Dep't 2011); *Etevob v. Republic of Argentina*, 471 F. Supp. 2d 432, 443 (S.D.N.Y. 2007) ("an owner of a beneficial interest . . . must receive authorization from the registered holder of the bond before it may sue"), *aff'd sub nom. Mazzini v. Republic of Argentina*, 282 F. App'x 907 (2d Cir. 2008); *see Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 230 (S.D.N.Y. 2020). The rule is straightforward: a beneficial owner must plead and prove a valid chain of authorization from the registered holder.

In an effort to satisfy the first element of a breach of contact claim, Plaintiffs conclusorily pleaded with respect to each of the Bonds that "[t]here exists a valid, binding and enforceable contract between Plaintiffs and the . . . Class members, as holders of the [] Bonds under the 2001 [or 1997] FAA, and the Republic, as the obligor under the 2001 [or 1997] FAA and the [] Bonds,"

ECF No. 48 ¶¶ 68, 78, 88, 98, 108, 118, 128, 138, 148, 158, 167, attaching only the 2001 and 1997 FAAs as Exhibits A and B to the SAC. This allegation is inconsistent with the terms of the FAAs. As noted above, the FAAs each name the U.S. Depositary (or its nominee) as the owner and holder of the Bonds. ECF No. 48, Ex. A § 1(e)(i)–(ii). Plaintiffs have neither pleaded nor argued that they are the intended third-party beneficiaries of the FAAs. *See* ECF No. 39, 48. In fact, Plaintiffs concede they are not the registered holders of the bonds and hold only beneficial interests. ECF No. 48 ¶¶ 28-31, 53-63. Thus, without more, Plaintiffs cannot enforce the terms of the relevant contracts.

**2. Plaintiffs Lack Authority to Sue on Ten of the Eleven Series of Bonds.**

The FAAs and offering documents reserve enforcement rights to the registered holder. *See supra,* Statement of Facts ("SoF"), subsections A, B. Plaintiffs do not contend otherwise; the SAC pleads that they and every absent member hold "beneficial interests in the issuer's Global Bonds, but not the Global Bonds themselves." ECF No. 48 ¶¶ 53–63. To sue in their own names, Plaintiffs had to obtain authorization running to them personally. On ten of the eleven series, they did not.

Nine of those series are DTC-held, and the Cede & Co. letters Plaintiffs rely on authorize "the Participant"—Citibank U.S.—and no one else. *See supra*, SoF, subsection B. Plaintiffs are identified only as "Beneficial Owner[s]," on whose behalf the Participant may act. None has produced any authorization from Citibank U.S., and each testified that he or she knows of none. S. Zahn Tr. 47:3–50:18; J. Zahn Tr. 69:2–73:4, 73:20–75:7, 76:8–77:22; Schneider Tr. 75:8–80:10. The chain of authority thus stops one link short of every Plaintiff, and where authorization runs only to a DTC participant rather than to the beneficial owner who files suit, the beneficial owner may not sue. *Springwell*, 81 A.D.3d at 558; *accord Etevob*, 471 F. Supp. 2d at 443. That defect is not curable by hindsight: nine of the letters were obtained ten to fifteen months *after* this action was filed. *See supra*, SoF, subsection B.

Ms. Zahn's position on the tenth series for which there is a lack of authority to sue, the 9126 Bonds, is weaker still. The letter she received from Clearstream Banking, not Cede & Co., states only that a participant's account "had a holding" of 9126 Bonds on October 24, 2025; it disclaims any beneficial-owner-level segregation "in our books," assigns responsibility for accuracy to the account holder, and never states that Ms. Zahn owns anything. *See supra*, SoF, subsection I.B; S. Zahn Tr. 51:1–52:15. She therefore cannot establish the predicate ownership on which any authorization would have to rest, let alone authorization itself. *See Allan Applestein TTEE FBO D.C.A. v. Republic of Argentina*, No. 02-cv-4124, 2003 WL 22743762, at *1-3 (S.D.N.Y. Nov. 20, 2003) (denying summary judgment where Euroclear and broker records did not reconcile to the plaintiff Pedro Kalbermann's claimed holding, concluding "there is simply insufficient evidence in the record to find that Kalbermann is the beneficial owner of the bonds for which he seeks summary judgment").[7]

Faced with a different procedural posture, where, unlike here there was no pending motion to dismiss (and without defenses definitively lodged), Judge Cronan held that the Republic had waived its prudential standing defense by omitting it from its answer. *Zahn*, 2026 WL 2185589, at *5. In this case, however, the Republic has not answered the SAC; it is concurrently moving to dismiss. As a general matter, an amended complaint "supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).

Moreover, with regard to exceptions to the general rule, the Second Circuit treats *any* merits-based defenses that might have been waived in response to an earlier pleading as revived

[7] Although Ms. Zahn stated in a June 24, 2026 filing her intent to correct the authorization error during the pendency of this lawsuit within the "reasonable time" permitted under Federal Rule of Civil Procedure 17(a) (*Zahn*, 24-cv-09271, ECF No. 56, at 1, 4), no such letter has been received to date and until such time as she produces a letter for the Republic to assess its effectiveness and timeliness, she lacks standing. The same is true for Mr. Zahn and Mr. Schneider.

by the amended pleading. *Carroll v. Trump*, 88 F.4th 418, 432-33 (2d Cir. 2023) (distinguishing between non-revivable defenses concerning a party's willingness to submit to judicial resolution and "revivable, merits-based defenses"), *adhered to*, 151 F.4th 50 (2d Cir. 2025); *Perez Perez v. Escobar Constr., Inc.*, 23-cv-1240, 2024 WL 3594325, at *1 n.1 (2d Cir. July 31, 2024) (same); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (holding that merits-based Rule 12 defenses may be asserted in response to an amended complaint); *Lau v. Fay Servicing, LLC*, 23-cv-1385, 2025 WL 2217280, at *2 (S.D.N.Y. Aug. 5, 2025) (holding that a merits-based defense was revived by the filing of a second amended complaint). Prudential standing is a merits-based defense because it concerns whether the plaintiff possesses the legal right to enforce the claim, not whether the defendant objects to litigating in the chosen forum. *See Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) ("prudential standing does not present a jurisdictional question, but 'a merits question: who, according to the governing substantive law, is entitled to enforce the right?'") (quoting *Norris v. Causey*, 869 F.3d 360, 367 (5th Cir. 2017)).[8] In lieu of an answer, the Republic has filed a motion to dismiss Plaintiff's SAC pursuant to Rule 12(b)(6), and there is no waiver of an affirmative defense by the filing of a Rule 12(b)(6) motion to dismiss. *See Index Fund, Inc. v. Hagopian*, 107 F.R.D. 95, 102 n.8 (S.D.N.Y. 1985) ("Rule 12 does not mandate that a defendant present a defense by motion prior to asserting it in a responsive pleading"). No answer to the SAC would be filed unless the Court denies the Republic's motion to dismiss. *See* Fed. R. Civ. P. 12(a)(4)(A).

---

[8] In any event, the Court may consider *sua sponte* a plaintiff's lack of prudential standing or authority to sue. *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015); *Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, 14-cv-10102, 2022 WL 2702616, at *12 (S.D.N.Y. July 12, 2022).

### B. The Zahns, Who Seek to Represent Eight Of The Eleven Classes, Are Subject to The Unique Defense of Champerty.

The breach of contract claims asserted by Ms. and Mr. Zahn are each subject to the defense of champerty, which will require a fact-intensive, individualized inquiry into each in order to resolve. *See Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160, 167 (2016) (stating that "the critical issue in assessing whether such acquisition is champertous" is the purchaser's purpose); *Zahn*, 2026 WL 2185589, at *6-7 (inquiry requires a "fact-intensive analysis"). It is well established that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Brown v. Kelly*, 609 F.3d 467, 480 (2d Cir. 2010) (citations omitted); *see Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp*., 222 F.3d 52, 59–60 (2d Cir. 2000) (representative may be inadequate where unique defenses threaten to dominate the litigation). The danger is that the case devolves into litigation over issues peculiar to the representative, "divert[ing] attention away from the plaintiff['s] basic claim" and undermining the interests of absent class members. *Landry v. Price Waterhouse Chartered Accts*., 123 F.R.D. 474, 477 (S.D.N.Y. 1989). The Court need not decide now whether such a defense will ultimately prevail; certification must be denied where there is a "sufficiently clear showing" that the defense applies and is substantial enough to become a central focus. *Metcalf v. TransPerfect Translations Int'l Inc.*, No. 19-cv-10104, 2024 WL 1208975, at *9 (S.D.N.Y. Mar. 21, 2024); *accord Zahn*, 2026 WL 2185589, at *6 ("the relevant question at this stage is not whether Zahn's purchase of the [] Bonds in fact constituted champerty, but rather whether that defense is sufficiently meritorious and threatens to become the focus of the litigation" (citations omitted)).

New York Judiciary Law § 489 bars "individuals and companies from purchasing or taking an assignment of notes or other securities 'with the intent and for the purpose of bringing an action

or proceeding thereon.'" *Justinian*, 28 N.Y.3d at 166 (quoting N.Y. Jud. Law § 489(1)). A purchase is champertous where its primary purpose is to enable a lawsuit, *id.* at 166–67, and where suit is the essence of the acquisition, the acquisition is void, *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 281 (S.D.N.Y. 2020), *aff'd*, 2021 WL 4515256 (2d Cir. Oct. 4, 2021). The statutory safe harbor is unavailable to the Zahns, whose positions come nowhere near § 489(2)'s $500,000 aggregate-purchase-price threshold. The inquiry is "a decidedly fact-specific" one. *CIBC Bank & Tr. Co. (Cayman) v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1111 (S.D.N.Y. 1995); *see Romero v. Flaum Appetizing Corp.*, No. 07-cv-7222, 2011 WL 812157, at *3 (S.D.N.Y. Mar. 1, 2011) (unique defenses become the litigation's focus where they "almost certainly require fact-intensive inquiries").

The showing that the champerty defense is substantial here is sufficiently clear. The Zahns are experienced sovereign debt litigants who profited from the Argentine default, and their own declaration ties this case to that experience: they "continued to purchase some more Venezuela sovereign bonds" after learning from counsel "about class actions as an alternative way to seek recovery on defaulted bonds," retaining counsel recommended by the lawyer who had handled their Argentine claims. ECF No. 33 ¶¶ 8, 12, 14. Ms. Zahn has been a plaintiff in at least seven other recent lawsuits in addition to this action. Shaftel Decl. ¶ 37. Mr. Zahn's acquisitions make the point unmistakable. He held nothing in any of the eleven Bond series as of early December 2024. That month he took $10,000 face amount each of the AC16 and AA59 Bonds by paper transfer from his wife—for no apparent consideration—and bought $10,000 face amount of AS37 Bonds. Suit followed on January 8, 2025. *See supra*, SoF, subsection E. He had known of the default since 2018 (J. Zahn Tr. 27:13–19) and had concluded a year earlier that the Bonds were a "very good investment" at under 20 cents on the dollar (J. Zahn Tr. 61:7–21), yet he waited to buy

until what he believed was the eve of the expiration of the limitations period. Timing like this supports an inference of champertous intent. *See CIBC*, 886 F. Supp. at 1111. And Mr. Zahn cannot explain his purchases as ordinary debt collection: he testified that he is "a hundred percent certain that the country is going to pay back the bonds and the interest that they owe" (J. Zahn Tr. 51:19–52:9) and yet sued the Republic just weeks after acquiring the debt.

Ms. Zahn's exposure is the same, with an added complication. She knew Venezuela had defaulted before the bonds in her name were purchased, S. Zahn Tr. 41:8–43:19, but her husband made every purchase decision and every strategic choice. ECF No. 33 ¶ 5; ECF No. 39 at 8; S. Zahn Tr. 34:9–36:6, 68:11–13. The champerty inquiry as to her therefore cannot stop at her own subjective purpose; it must reach the intent, agency, and litigation awareness of her husband.

Judge Cronan, on the same testimony and a similar investment history, concluded that Ms. Zahn "failed to prove that she is a typical and adequate plaintiff to bring this class action," holding that the "combination of [her] aloofness and Venezuela's unique defense of champerty . . . is fatal to her assertions of typicality and adequacy." *Zahn*, 2026 WL 2185589, at *6-7. The analysis applies with equal force to Mr. Zahn, whose acquisitions are more recent, smaller, and even more plainly litigation-driven than his wife's.[9]

### C. Sabine Zahn's Disengagement Independently Defeats Adequacy.

"An essential element of adequacy of representation is that the class representative be sufficiently familiar with the case as to exercise independent control over the attorney." *Scott v.*

[9] As Ms. Zahn argued previously, the Zahns may argue that New York Judiciary Law § 489 does not apply because they are not professional debt collectors. *See* Reply Memorandum of Law at 4-6, *Zahn*, 1:24-cv-09271, ECF No. 53. But the statute covers anyone engaged "directly or indirectly in the business of collection and adjustment of claims"—a formulation broad enough to encompass individuals who have made a practice of acquiring claims for the purpose of litigation. The Zahns' pattern of acquiring defaulted sovereign debt and pursuing recovery through litigation strongly suggests that they fall within the statute's reach. *See Zahn*, 2026 WL 2185589, at *7.

*New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 355 (S.D.N.Y. 2004). A representative must possess at least minimal knowledge of the action, *Koenig v. Benson*, 117 F.R.D. 330, 336–37 (E.D.N.Y. 1987), and certification is denied where representatives have "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys," *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir. 1995) (citations omitted).

Sabine Zahn conducted no due diligence, "relied on [her] husband [for] doing [it]" because he "is in charge of that," did not select her lawyers, and does not speak with them—learning of the case only "[b]y talking to [her] husband about [it] and . . . reading what they sent [her]." S. Zahn Tr. 34:9–35:1, 54:10–14, 61:11–15; *see* S. Zahn Tr. 68:18–69:7 (her "husband has taken over talking to the attorneys" about this action). At deposition she could not say when this action was filed, did not know the presiding judge, could not identify the contract governing the Bonds, did not know which Bonds are at issue—including those she purportedly holds—and did not know when they defaulted. S. Zahn Tr. 22:18–20, 23:16–18, 25:20–26:1, 29:13–19, 32:2–10. This is the nominal, disengaged plaintiff Rule 23(a)(4) exists to screen out. *See Scott*, 224 F.R.D. at 357 (plaintiffs inadequate and "superfluous" where they lacked "familiarity with the facts and nature of their action" and had "turned over the prosecution and monitoring of their case to counsel"). Judge Cronan reached that conclusion on this record, finding that her "testimony demonstrates a concerning detachment from her own purported investments and her attorneys' handling of this litigation that calls into question her ability to protect class interests." *Zahn*, 2026 WL 2185589, at *5.

**D. Jöerg Zahn Does Not Wish to Serve.**

Adequacy also turns on a representative's understanding of, and "demonstrated willingness to carry [forward]," the role. *Baffa*, 222 F.3d at 62. Asked why he would be a good representative

for other class members, Jöerg Zahn answered: "I have no answer to that question. I -- I think I was -- I knew Michael [Spencer], and I think, therefore, I am just chosen by accident to be the class member here. I was hoping not to." J. Zahn Tr. 100:3–11. His understanding of the role comes largely from movies, and he could not describe his own alleged holdings, the class he would represent, or his counsel's activities. J. Zahn Tr. 25:3–6, 30:18–20, 33:7–8, 96:6–14. A fiduciary conscripted over his own stated preference cannot be relied on to discharge fiduciary duties to absent members.

### E. Josef Schneider's Trading Intentions Conflict with the Class He Would Represent.

After filing suit, Josef Schneider purchased an additional $23,500 face amount of AJ95 Bonds that are excluded from this action. Schneider Tr. 71:25–72:18. He explained his plan for them: "I hoped to find a silly guy who would buy my bonds for a high price after trading again. Only speculating." Schneider Tr. 73:7–19. His incentives for the AJ95 Bonds inside and outside this case are identical, and both favor exiting at a favorable market price. A representative who intends to sell into the market retains an option that absent members, bound by any judgment, do not—and his interest in near-term price diverges from the class's interest in maximum litigated recovery. *See Koenig*, 117 F.R.D. at 333-34 (class representative owes fiduciary duties to the class).

## II. CLASS CERTIFICATION IS UNWARRANTED UNDER RULE 23(B)(3) BECAUSE COMMON QUESTIONS DO NOT PREDOMINATE.

Irrespective of the decision regarding class representatives, the criteria for certifying a class action clearly is not met on this record. To certify a class under Rule 23(b)(3), Plaintiffs must first demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3). A combination of individualized issues can collectively defeat predominance even where no single issue alone would

suffice. *See, e.g.*, *Decastro v. City of New York*, No. 16-cv-3850, 2019 WL 4509027, at *16 (S.D.N.Y. Sept. 19, 2019); *Weiner v. Snapple Beverage Corp.*, No. 07-cv-8742, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010). Plaintiffs' Motion fails to grapple with the individualized inquiries this Court would have to undertake, each of which would generate the sort of mini-hearing that, aggregated, overwhelms the single common question of whether the Republic paid. *Traver v. Lowe's Home Ctrs., Inc.*, No. 12-cv-3528, 2014 WL 12825659, at *16 (E.D.N.Y. June 27, 2014), *adopted*, 2016 WL 880169 (E.D.N.Y. Mar. 1, 2016).

**A. Beneficial Ownership Cannot Be Established Without Individualized Tracing.**

Plaintiffs define each of the eleven classes as "all holders" of the beneficial interests in the issuer's Global Bonds "on January 7, 2025, who continue to hold thereafter." ECF No. 48 ¶¶ 53–63. Plaintiffs allege that members can be identified from records maintained by clearing agents, their participants, and brokers. ECF No. 48 ¶ 64(c). That allegation underscores, rather than cures, the problem: class membership would depend on clearing-system records, participant records, broker records, transfer history, and continued holding—none of it in any single place.

The custodial structure described above, *see supra*, SoF, subsection A, makes reconstruction of ownership a multi-layered exercise: DTC knows only its participants, each intermediary knows only its own customers, and no record links a series to its ultimate beneficial owners as of a date certain.

Plaintiffs' own experience proves it. Ms. Zahn's depository would not confirm her beneficial ownership at all. Shaftel Decl. ¶ 19, Ex. 16 (CAVARA000096) (beneficial-owner segregation "is not reflected in our books"). And Mr. Schneider, asked why his Cede letter recited a $93,500 face amount when he sues on $70,000, testified that the depository "just ha[s] a total amount of ownership in their portfolio and they don't have a way to see what the value was at a certain time," and agreed that "there's no way to separate out authorization for holdings at a

specific time frame." Schneider Tr. 81:20–82:13. That admission is fatal with respect to Schneider and all prospective class members. Rule 23 carries an "implied requirement of ascertainability," meaning the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher*, 806 F.3d at 24 (citations omitted). If a named plaintiff's own holdings cannot be verified as of a date certain, then no class defined by date-certain beneficial ownership—as all eleven are—is administratively feasible. Proving membership would instead require individualized evidence from each holder, traced along its own custodial path.

Courts have repeatedly recognized that this kind of sprawling ownership inquiry defeats predominance. *See, e.g.*, *In re Petrobras Sec.*, 862 F.3d 250, 272-74 (2d Cir. 2017); *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, No. 14-cv-9764, 2018 WL 739580, at *14 (S.D.N.Y. Jan. 10, 2018) ("Tracing transactions in securities that . . . are recorded as indirect electronic entries in a depository would require evidence that varies from member to member and is not obviously susceptible to [ ] class-wide proof."); *Diverse Partners, LP v. AgriBank, FCB*, No. 16-cv-9526, 2019 WL 4305008, at *2–3 (S.D.N.Y. Sept. 11, 2019) (declining to certify a class of beneficial owners on nearly identical facts).

Plaintiffs' reliance on *Mazzini v. Republic of Argentina*, No. 03-cv-8120, 2005 WL 743090 (S.D.N.Y. Mar. 31, 2005), and *Olifant Fund, Ltd. v. Republic of Argentina*, No. 10-cv-9587, 2012 WL 1205079 (S.D.N.Y. Apr. 11, 2012), is misplaced. ECF No. 39, at 21–22. Neither was a class action. Indeed, the individualized analysis of each plaintiff's ownership in those cases confirms that beneficial ownership is not susceptible to generalized proof.

The Declaration of William W. Wickersham describes a process for class notice and payment. ECF No. 37. But the ability to *transmit* notice and payments through intermediaries

says nothing about the ability to *determine* who owned the Bonds on January 7, 2025 and held thereafter. Notice under Rule 23(c)(2) is a separate question from predominance, and class-membership eligibility must be resolved under the latter. *Petrobras*, 862 F.3d at 268–70, 272–75. Because such inquiries go to the viability of each putative class member's claim, they are "aggregation-defeating" under Rule 23(b)(3). *Id.* at 270.

**B. Sanctions Compliance Requires Member-By-Member Analysis.**

Because the Bonds are blocked property, each class member will require a specific OFAC license to enter into any settlement or enforce any judgment, and OFAC licensing entails fact-specific review of each applicant's circumstances. *See supra*, SoF, subsection C.

A substantial portion of Venezuela's sovereign debt is held within Venezuela, a legacy of the government's practice, beginning in 2003, of allowing Venezuelans to buy dollar-denominated bonds at a subsidized exchange rate. Shaftel Decl. ¶ 38, Ex. 33. The proposed classes may include persons subject to United States sanctions, who could obtain a contingent interest in blocked property without ever appearing, testifying, or submitting to discovery. FAQ 3, Off. of Foreign Assets Control (Aug. 21, 2024), https://ofac.treasury.gov/faqs/3; FAQ 53, Off. of Foreign Assets Control (Jan. 15, 2015) ("'property' is very broadly defined, including present, future or contingent interests"), https://ofac.treasury.gov/faqs/53.

Screening *cannot* be accomplished simply by checking OFAC's Specially Designated Nationals ("SDN") List. Sanctions reach categories of persons not individually listed, FAQ 91, Off. of Foreign Assets Control (Aug. 21, 2024), https://ofac.treasury.gov/faqs/91, and under the "50 Percent Rule" any entity owned 50 percent or more by blocked persons is itself blocked, even if unlisted. Off. of Foreign Assets Control, Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property Are Blocked (Aug. 13, 2014). Determining whether a class member falls under that rule requires tracing each entity's ownership structure—an

inherently individualized inquiry, repeated for every member of eleven classes. FAQ 401, Off. of Foreign Assets Control (Aug. 13, 2014), https://ofac.treasury.gov/faqs/401.

### C. The Champerty Defense as to Absent Members Cannot Be Tried On Common Proof.

Defendant has a due process right "to present every available defense," *Lindsey v. Normet*, 405 U.S. 56, 66 (1972), and the class device cannot "abridge, enlarge or modify" that right, *Dukes*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)). The Republic will have a champerty defense against absent members, not merely against the Zahns.

In *Syracuse Mountains Corp. v. Petróleos de Venezuela S.A.*, the court granted summary judgment on champerty grounds against a noteholder formed to litigate Venezuelan quasi-sovereign debt. No. 21-cv-2684, 2024 WL 3637997, at *3–4 (S.D.N.Y. Aug. 1, 2024). Entities like that one may well be members of the proposed classes, and presenting this defense would require discovery into each class member's subjective intent and consideration paid. The answers will vary member by member: some holders purchased before default, after default, after maturity, after acceleration, or after litigation was threatened or filed, and some in ordinary secondary-market transactions rather than through assignments, claims aggregators, litigation funding arrangements, or counsel-directed transactions. Those distinctions cannot be resolved by common evidence.

### D. The 9126 Class Presents Additional Non-Common Issues.

The 9126 claim depends not only on missed interest payments but also on an alleged December 22, 2020 acceleration by unnamed holders of more than 25% of outstanding principal. ECF No. 48 ¶¶ 19, 41 n.2, 42, 46, 48, 115–124. Its validity turns on who joined the demand, whether they were holders or authorized proxies, whether they held more than 25% of the "Outstanding" 9126 Bonds after excluding public-sector holdings, and whether each member's

damages run on accelerated or stated-maturity principal. ECF No. 48, Ex. A § 11(a); *id.*, Amendment No. 1 § 11(f)(iv). More broadly, damages across all eleven classes will vary with each member's holdings, acquisition dates, and, for the 9126 Class, the acceleration theory. Individualized damages alone would not defeat certification, *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405–08 (2d Cir. 2015), but they must be measurable on a class-wide basis consistent with the liability theory, *Comcast Corp.*, 569 U.S. at 34–38, and here they add to a set of individual issues that is already overwhelming, *see Decastro*, 2019 WL 4509027, at *16; *Weiner*, 2010 WL 3119452, at *6.

### E. The Individualized Issues Collectively Overwhelm the One Common Question.

It is not enough to identify a single common issue—here, whether the Republic paid—and declare it predominant. *See In re Petrobras Sec.*, 862 F.3d at 270. Plaintiffs' contention that the Republic's liability predominates because the classes are "unified through [the] common contract documents and terms" (ECF No. 39, at 15) ignores how this litigation would actually proceed. Each inquiry set forth in Sections III.A through III.D is individualized, fact-intensive, and incapable of resolution through common proof. Taken together, they overwhelm the sole common question of liability.

## III. CLASS CERTIFICATION IS UNWARRANTED UNDER RULE 23(B)(3) A CLASS ACTION IS NOT SUPERIOR TO OTHER AVAILABLE METHODS.

Even if Plaintiffs could satisfy predominance, they also must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The relevant factors—class members' interest in

controlling their own actions, the extent of litigation already begun, and the likely management difficulties (*id.*)—all demonstrate that a class action is not superior in this instance.[10]

### A. Bondholders Have Shown that Individual Actions are Feasible and Preferable.

Plaintiffs argue that a class action is superior because "numerous dispersed individual investors would not likely be able to arrange and afford to pursue individual actions." ECF No. 39 at 16. The assertion is unsupported: Plaintiffs have not identified a single potential class member deterred by cost or practical barrier. And the Court must weigh "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B); *see Steinmetz v. Bache & Co.*, 71 F.R.D. 202, 206 (S.D.N.Y. 1976) (class action "not superior" where bondholders—including holders of $10,000 or less—had already filed individual suits).

A significant number of lawsuits asserting breach of contract claims on Venezuelan sovereign debt have already been filed in this District, which allege the same events of default and seeking the same remedies as this action. Shaftel Decl. ¶ 36. Sophisticated institutional investors hold a substantial share of this debt and plainly have the resources and incentive to sue on their own. *See Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 400 (S.D.N.Y. 2018) (class action not superior where sophisticated investors could and did bring individual suits).

The actions filed to date also reveal sharply divergent litigation strategies. Many bondholders voluntarily dismissed their actions without prejudice after obtaining a concession from the Republic to toll the statute of limitations, thereby preserving flexibility as events unfold. *See supra,* SoF, subsection D. Others have pressed for judgment. *See, e.g.*, *Casa Express Corp.*, 492 F. Supp. at 222; *Contrarian Cap. Mgmt., L.L.C. v. Bolivarian Republic of Venezuela*, No. 19-

---

[10] Because this case should not proceed as a class action pursuant to Rule 23(b), there is no basis for a determination that Plaintiffs may serve as class representatives under Rule 23(a).

cv-11018, 2020 WL 5849013 (S.D.N.Y. Oct. 1, 2020). Those choices reflect a pronounced interest in individual control—an interest that has only sharpened as the political situation in Venezuela has changed and restructuring becomes conceivable. Class proceedings that foreclose those strategies, on behalf of absent members whose notice must travel through the same opaque custodial chain that makes their identification impossible, *see supra,* Section III.B, are not the superior method.

**B. Eleven Classes of Unidentifiable Members Would Be Unmanageable.**

Plaintiffs contend that a class action "will streamline the litigation process." ECF No. 39, at 16. The opposite is true: "the greater the number of individual issues, the less likely superiority can be established." *Dover v. Brit. Airways, PLC (UK)*, 321 F.R.D. 49, 58 (E.D.N.Y. 2017) (citations omitted). Courts routinely deny certification on superiority grounds where individualized inquiries would require mini-hearings on each member's claim. *See, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 436 (S.D.N.Y. 2019) (superiority not satisfied where the need for individualized inquiries rendered the matter "unmanageable"). Here, the Court would face eleven classes, two fiscal agency agreements, two custody systems, member-by-member ownership tracing, OFAC screening and licensing, and champerty discovery—all before reaching damages.

**C. Tolling Does Not Make a Class Action Superior.**

Plaintiffs contend that class treatment is superior because it is necessary to toll the statute of limitations for all similarly situated bondholders. ECF No. 39, at 17–19. They cite no authority that tolling considerations render a class action "superior." In any event, the statute of limitations on the Bonds is already tolled through December 31, 2028. *See supra*, SoF, subsection D; *Mazzaccone v. The Bolivarian Republic of Venezuela*, No. 24-cv-6168, 2026 WL 444752, at *1 (S.D.N.Y. Feb. 17, 2026) ("*Mazzaccone I").* Three of the four Plaintiffs said so themselves, in a

stipulation dismissing their own individual claims in reliance on that extension two months after filing this case. *See supra*, SoF, subsection D; Joint Stipulation and Order of Partial Dismissal Without Prejudice at 2-3, *Arpesella*, No. 23-cv-08929 (S.D.N.Y.), ECF No. 37. They have conceded that there is no need for a class action for tolling purposes.[11]

**CONCLUSION**

Defendant respectfully requests that the Court deny the Motion.

---

[11] Plaintiffs rely heavily on *Mazzaccone I*, which certified classes of beneficial owners of Venezuelan bonds. ECF No. 39, at 2, 9, 11-17, 20-22. That decision does not control here, for four reasons. First, it is not binding on this Court, and the more recent decision in *Zahn*—issued five months later, on a fuller record (that includes the specific deposition admissions, defective authorization letters, and a specific tolling stipulation discussed herein), involving one of these very Plaintiffs—reached the opposite conclusion. Second, *Mazzaccone I* involved a different investor whose acquisition history, engagement, and documentation are not before this Court; Rule 23(a) is assessed plaintiff by plaintiff. *See Dukes*, 564 U.S. at 348–49. Third, the record here is materially different: the Plaintiffs' deposition admissions that no Citibank authorization exists, Ms. Zahn's inability to document ownership of the 9126 Bonds, Mr. Schneider's admission that date-certain holdings cannot be verified, Mr. Zahn's disclaimer of any wish to serve, and three Plaintiffs' own stipulation acknowledging that limitations are tolled through 2028. Fourth, *Mazzaccone I* addressed a single set of proposed classes; Plaintiffs here ask this Court to certify *eleven*, across two fiscal agency agreements and two distinct custody systems, on behalf of four representatives, three of whom have yet to show that they can enforce the instruments they sue on.

Dated: New York, New York
September 8, 2026

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Hal S. Shaftel*
Hal S. Shaftel
John C. Molluzzo Jr.
One Vanderbilt Avenue
New York, NY 10017
Tel 212.801.9200
Fax 212.805.6400
shaftelh@gtlaw.com
molluzzoj@gtlaw.com

*Counsel for Defendant The Bolivarian Republic of Venezuela*

**CERTIFICATE OF SERVICE**

I certify that on September 8, 2026, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on Plaintiffs' counsel of record, identified below:

Anthony J. Costantini
Arti Fotedar
Stephanie Lamerce
DUANE MORRIS LLP
22 Vanderbilt
New York, New York 10017
Telephone: (212)-692-1032
ajcostantini@duanemorris.com
afotedar@duanemorris.com
slamerce@duanemorris.com

Rudolph Joseph Di Massa
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215)-979-1506
dimassa@duanemorris.com

*/s/ Hal S. Shaftel*
Hal S. Shaftel

**LOCAL RULE 7.1(C) CERTIFICATION**

I, Hal S. Shaftel, an attorney duly admitted to practice before this Court, hereby certify that this memorandum of law in Opposition to Plaintiffs' Motion for Class Certification, Appointment of Plaintiff as Class Representative, and Appointment of Duane Morris LLP as Class Counsel complies with the word limit set forth in Local Rule 7.1(c), as it contains 8,748 words, excluding those items permitted for exclusion under this Local Rule. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

*/s/ Hal S. Shaftel*
Hal S. Shaftel